No. 619 November 29, 2023 309

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ANTHONY HIGGINS,
*Defendant-Appellant.*

Polk County Circuit Court
21CR56708; A178813

Monte S. Campbell, Judge.

Submitted August 21, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Alex Jones, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him of, among other offenses, resisting arrest, ORS 162.315.[1] In a single unpreserved assignment of error, he argues that the trial court plainly erred and prejudiced him by failing to instruct the jury that a culpable mental state attached to the "substantial risk of physical injury" element of resisting arrest. The state concedes that the court plainly erred but argues that any error was harmless. We agree with the state and, therefore, affirm the trial court's judgment.

Defendant's conviction arose from an incident where the police handcuffed him while arresting him for breaking into a building. At his trial, defendant argued that he was under the influence of intoxicants at the time of the incident and could not have developed the necessary mental state to resist arrest. The state introduced corroborating testimony from the three officers involved in defendant's arrest—the arresting officer, Sergeant Fenk, and Deputies Fagan and Hutchison—and video of the incident recorded by two of the officers' body cameras. Fenk testified that defendant was "not" "combative" upon learning that he was under arrest but "spun away" and "kind of did a windmill swing at" Fenk when Fenk started to handcuff him; as the officers put defendant to the ground to detain him "safely," defendant screamed at them and used physical strength to "resist[]" the officers' "efforts to try to get his hands behind his back," taking them at least 30 seconds to contain and handcuff him.

As to defendant's demeanor, Fenk testified that defendant "was fine" and Fagan testified that, based on his experience, defendant did not appear to be under the influence. According to Fenk and to the related footage, before the incident defendant was able to engage in conversation and answer Fenk's routine questions. Defendant's mother testified that prior to the incident defendant appeared to be in "psychosis" from using methamphetamine; she was

---

[1] A person who "intentionally resists" a peace officer "in making an arrest" commits the crime of resisting arrest. ORS 162.315(1); *see also* ORS 162.315(2)(c) (defining the term "resists," which includes a "substantial risk of physical injury" element).

unsure if her observations occurred during the morning of his arrest or on the prior morning.[2]

Defendant maintained during closing arguments that he could not have formed the mental state to resist arrest. The court gave the jury the uniform instructions described below and did not instruct the jury whether the state was required to prove defendant's mental state for the "substantial risk of physical injury" element.

> "When used in the phrase 'intentionally resist the police officer,' 'intentionally' means that a person acts with a conscious objective to resist acts of a peace officer in making an arrest.

> "* * * * *

> "[T]o establish a crime of resisting arrest, the state must prove beyond a reasonable doubt [that defendant] intentionally resisted the peace officer in making the arrest.

> "* * * * *

> "The term 'resist' means the use or threatened use of violence, physical force, or any other means to create a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer."

The jury found defendant guilty.

On appeal, defendant argues for the first time that the state was required to prove his mental state for the "substantial risk of physical injury" element and that the trial court erred and prejudiced him by not providing that instruction. *See State v. Tow*, 321 Or App 294, 298, 515 P3d 936 (2022) (requiring a culpable mental state for that element); *see also State v. Egeland*, 260 Or App 741, 746-52, 320 P3d 657 (2014) (discussing prejudice of an instructional error). He specifically argues that the court should have instructed the jury that, to find him guilty of resisting arrest, the jury had to find that he was at least criminally negligent as to

---

[2] Fenk also testified that there were "signs" that defendant "could have been" under the influence of intoxicating substances—defendant had blood on his face from, according to him, getting hurt during a fall; he was not wearing pants, underwear, or shoes; and he had a blanket covering his lower body.

the "substantial risk of physical injury" posed by his conduct. He asks us to exercise our discretion to review his case for plain error under ORAP 5.45 and to remand for a new trial. The state concedes that the trial court erred in failing to instruct as to a culpable mental state for the "substantial risk of physical injury" element but asserts that we should not exercise our discretion to address that error. We agree because, even assuming that the trial court was required to instruct the jury that the jury had to find whether defendant acted with, at a minimum, criminal negligence,[3] we conclude that any error in the court's failure to do that was harmless.

We review unpreserved challenges concerning mental-state instructions to determine whether any asserted error was harmless, and if we conclude so, we affirm. *State v. McKinney/Shiffer*, 369 Or 325, 334, 505 P3d 946 (2022).[4] A trial court's instructional error is harmless if there is "little likelihood" that the particular error affected the verdict—that is, when "the particular issue to which the error pertains has no relationship" to the related jury determination. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see also* ORS 138.257(2) (prohibiting reversal of a harmless error). An instructional error is prejudicial if the error "probably created an erroneous impression of the law in the minds of the jury members and if that erroneous impression may have affected the outcome of the case." *McKinney/Shiffer*, 369 Or at 335 (internal quotation marks omitted). To assess that, we consider the instructions "as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020).

Here, we conclude that there is "little likelihood" that the jury would have reached a different verdict had

---

[3] Oregon courts have not addressed what exact mental state would apply for the "substantial risk of physical injury" element of resisting arrest. *See Tow*, 321 Or at 299 (declining to make that determination). Because that decision does not affect our review, we assume, without deciding, that the minimum applicable culpable mental state for that element is criminal negligence. *See State v. Owen*, 369 Or 288, 505 P3d 953 (2022) (applying a criminal negligence standard for the injury element of second-degree assault).

[4] *Cf.* ORS 19.415(2) (no judgment shall be reversed, "except for error substantially affecting the rights of a party").

the court given the "criminal negligence" instruction that defendant proposes. The jury's guilty verdict was based on instructions that required a finding that defendant acted intentionally—"with a conscious objective"—to "resist" his arrest by using means, including "the use or threatened use of violence" and "physical force," to "create a substantial risk of physical injury" to those present at the time. Those findings indicate that the jury believed that the evidence proved that defendant consciously chose to spin away, scream, and use physical force to resist his handcuffing and so resist his arrest. Those findings further indicate that the jury did not believe that defendant's alleged intoxication prevented him from acting intentionally at the time.

More specifically, the jury's findings discussed above, especially the inferences drawn from those findings about how the jury viewed the evidence in the record, indicate that there is little likelihood that the absence of the criminal negligence instruction at issue had any "relationship to" the jury's respective determination.

> "'Criminal negligence' * * * means that a person fails to be aware of a substantial and unjustifiable risk that [a] circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(10). Based on the jury's findings—that defendant acted intentionally to "resist" his arrest by using the specified means to "create a substantial risk of physical injury" to those present at the time—there is little likelihood that the jury would not have also found that defendant failed to be aware that his conduct created the risk of physical injury at issue. *See State v. Owen*, 369 Or 288, 324, 505 P3d 953 (2022) (the jury's findings that the defendant knew that his conduct was assaultive and "readily capable of causing serious physical injury" indicated that the jury would not have found that the defendant was unaware of the risk of physical injury posed by his conduct). Likewise, there is little likelihood that the jury would not have found that defendant's failure to be aware of the risk created by his

conduct constituted the type of deviation described in ORS 161.085(10). *See id*. (supporting that conclusion).

Affirmed.