Submitted September 14, affirmed December 7, 2022, petition for review denied March 30, 2023 (370 Or 827)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALAN DANIEL SCATAMACCHIA,
*Defendant-Appellant.*

Washington County Circuit Court
20CR22062; A174880

522 P3d 26

Defendant appeals from a judgment of conviction for assault in the second degree, ORS 163.175, among other crimes, assigning error to the jury instructions about the requisite culpable mental states for that crime. *Held*: The instructions were erroneous in light of *State v. Owen*, 369 Or 288, 505 P3d 953 (2022), but the error was harmless because, given the evidence and defendant's theory of self-defense, there is little likelihood that the jury would have concluded that defendant was not at least criminally negligent in causing serious physical injury to the victim.

Affirmed.

Eric Butterfield, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant. Alan Daniel Scatamacchia filed the supplemental brief *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals his convictions for assault in the second degree, ORS 163.175; assault in the fourth degree, ORS 163.160; unlawful use of a weapon, ORS 166.220; menacing, ORS 163.190; interference with making a report, ORS 165.572; and theft in the second degree, ORS 164.045. We write to address his assignments of error relating to the jury instructions about the requisite culpable mental states for second-degree assault. We conclude that the instructions were erroneous in light of subsequent case law, but the error was harmless because there is little likelihood that the jury would have concluded that defendant was not at least criminally negligent in causing serious physical injury. Additionally, we reject defendant's remaining assignments of error.[1] We therefore affirm.

The charges arose out of an altercation between defendant and his roommate, K. At trial, defendant and K presented starkly different versions of events. K testified that defendant became agitated during an argument and began to push her around the apartment with his chest, so she called 9-1-1. At one point he brandished a kitchen knife at her and threatened to kill her. While she was still on the phone with the 9-1-1 operator, she thought that defendant left the apartment, but he then tackled her from behind, straddled her, held her by the hair, and punched her in the head and face approximately 20 times. Defendant, on the other hand, acknowledged that he punched K, but claimed that he acted in self-defense. He testified that K punched him several times before he punched her in the face, causing her to fall down. He acknowledged that he then straddled her and punched her head and face five or six more times.

The undisputed evidence at trial showed that, after the incident, K's eyes were swollen shut and she was bleeding profusely. She required stitches in several places on her face and mouth and suffered a "blow-out" fracture of the

---

[1] Defendant's remaining assignments of error challenge the admission of evidence over defendant's OEC 403 objection; the exclusion of evidence to which defendant argues the state "opened the door"; the inclusion of domestic violence allegations in the indictment read to the jury pool but which the state agreed to strike before trial; and an alleged discovery problem. We conclude that any such errors were harmless.

orbital socket, vision problems from a broken contact lens, and a concussion that caused headaches and short-term memory problems which persisted for several months.

The parties each requested special jury instructions about the culpable mental state for assault in the second degree. The state's requested instructions would have instructed the jury that, to prove that defendant knowingly caused serious physical injury to the victim, "the state needs to prove only that defendant was aware of the assaultive nature of his conduct." Defendant requested instructions that, to find defendant guilty, the jury "must find that [defendant] knew or believed his actions would result in serious physical injury," or, in the alternative, that "he knew of the assaultive nature of his conduct" and "that he negligently caused serious physical injury."

The trial court, with the state's acquiescence, ultimately decided to give only the uniform jury instruction that defendant "knowingly caused serious physical injury" to the victim. The jury also received definitions that "a person acts 'knowingly' or 'with knowledge' if that person acts with an awareness that his conduct is of a particular nature or a particular circumstance exists" and that "serious physical injury means a physical injury that (1) creates a substantial risk of death, (2) causes serious and protracted disfigurement, (3) causes protracted impairment of health, or (4) causes protracted loss or impairment of the function of any bodily organ."

After the trial, the Supreme Court clarified the required mental state for the injury element of the crime of assault. *State v. Owen*, 369 Or 288, 290, 505 P3d 953 (2022). Under *Owen*, for an assault conviction, the jury must find that the defendant "knew that his actions were assaultive *and* that, at least, he negligently caused physical injury by failing to be aware of the risk that his actions would cause such injury." *Id.* (emphasis in original). Accordingly, defendant was entitled to his alternative requested instructions, which required the jury to find that defendant knew of the assaultive nature of his conduct and that he was negligent as to resulting injury. *Id.* at 323. The trial court erred in declining to give those instructions.

We further conclude, however, that the error was harmless. "We will affirm the judgment below if we determine that there was little likelihood that the error affected the verdict." *Id.* (internal quotation marks omitted) (citing *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003)). "To make that determination, we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Id.* (internal quotation marks omitted) (citing *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020)).

Here, in light of the evidence and defendant's theory of self-defense, there is little likelihood that the outcome would have been affected by instructing the jury that defendant must have been at least criminally negligent in seriously injuring K. Criminal negligence requires that a defendant "fail[ed] to be aware of a substantial and unjustifiable risk" such that the "failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). A "serious physical injury" is one "which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8).

At trial, it was undisputed that defendant knocked K down, straddled her, held her by the hair, and punched her in the face multiple times. Nor was there any dispute that K suffered serious physical injuries as a result of those punches. What was in dispute were the reason that defendant punched K and the number of punches—either 5 or 6, as defendant testified, or about 20, as K testified. Defendant's mental state as to resulting serious injury was irrelevant to that question.

More than the number of punches, the critical issue at trial was whether defendant acted in self-defense. In convicting him, the jury either disbelieved his testimony that the victim initiated the altercation or concluded that the amount of force he used in response was disproportionate.

*See* ORS 161.209 ("a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose"). Either way, the question of whether defendant was criminally negligent that K would be seriously injured was not relevant to that determination. And in rejecting defendant's claim of self-defense, the jury necessarily found that the amount of force he used, and consequently the risk of injury he created, was unjustifiable under the circumstances.

Ultimately, the jury necessarily found that defendant deliberately and unjustifiably punched K's face multiple times from above with enough force to cause extensive injuries. Consequently, there is little likelihood that the jury would not have found that there was a substantial and unjustifiable risk that K would suffer protracted disfigurement, impairment of health, or impairment of bodily function as a result of his punches.

We are guided by the Supreme Court's harmless error analysis in *State v. Shedrick*, 370 Or 255, 518 P3d 559 (2022). That case also involved jury instructions that erroneously omitted the requisite mental state of criminal negligence, but for the element of the value of property in the crime of theft. *Id.* at 270. In determining that the error was harmless, the court considered the specific evidence at trial, the nature of criminal negligence, and "common knowledge" that jurors can be expected to have. *Id.* at 271. The court ultimately concluded that there was little likelihood that the jury would not have found that the defendant was at least criminally negligent with respect to his awareness that "a sizeable bundle of cash" for refilling an ATM "was worth a significant amount." *Id.* Just as the circumstances in *Shedrick* "indicated a substantial risk" that a sizeable bundle of cash was worth a significant amount, here five or six direct punches to the face at close range with sufficient force to cause a concussion and a blowout orbital fracture gave rise to a substantial risk that K would be seriously injured. *Id.*

Defendant's reliance on *State v. Hatchell*, 322 Or App 309, 519 P3d 563 (2022), is misplaced as that case arose under markedly different facts and relied on a different defense theory. In *Hatchell*, the defendant's theory of the case "was that he did not possess the requisite intent for that level of assault particularly since [the victim's] injuries were caused by incidental contact with his shin and not his foot from the kick." *Id.* at 313-14. As a result, the jury could have concluded that the defendant was not criminally negligent as to the risk that incidental contact with his shin would cause serious injury. *Id.* at 317. Here, in contrast, the defense theory did not hinge on defendant's mental state. Rather, defendant acknowledged that K's injuries were caused by his deliberate, not incidental, punches to her face. As a result, *Hatchell* does not control. On this record, there is little likelihood that instructing the jury that defendant must have been criminally negligent in seriously injuring K would have affected the outcome.

Affirmed.