200                    January 10, 2024                    No. 25

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHAD ADAM CHEEVER,
*Defendant-Appellant.*

Linn County Circuit Court
18CR64503, 19CR75319;
A176067 (Control), A176068

Thomas McHill, Judge.

Submitted November 13, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Hadlock, Judge pro tempore.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of second-degree assault, ORS 163.175, and second-degree murder, ORS 163.115, in case number 18CR64503 (the 2018 case), based on an incident that caused the death of his uncle. Defendant was convicted of two counts of fourth-degree assault, ORS 163.160, and one count of attempted fourth-degree assault, ORS 161.405, in case number 19CR75319 (the 2019 case), based on his punching three different people in prison. The cases were tried separately, about a month apart. In this consolidated appeal, defendant raises four assignments of error and six *pro se* supplemental assignments of error. We affirm.

*Denial of Motion for a Judgment of Acquittal on Murder Count.* In his first assignment of error, defendant challenges his murder conviction, arguing that the trial court erred when it denied his motion for a judgment of acquittal (MJOA). To prove the charged offense, the state had to prove that defendant, "recklessly under circumstances manifesting extreme indifference to the value of human life," caused the death of his uncle by neglect or maltreatment. ORS 163.115(1)(c). "Recklessly" means, as to a result element, "that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur." ORS 161.085(9). Defendant contends that the evidence was legally insufficient to prove that he was aware of and consciously disregarded a substantial and unjustifiable risk that his uncle would die (*i.e.*, that he acted recklessly), as well as legally insufficient to prove that he acted with extreme indifference to the value of human life.

Our task in reviewing the denial of an MJOA is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Where the state's case depends in whole or part on circumstantial evidence, "whether circumstantial evidence is sufficient to support a given inference is a question of law." *State v. Simmons*, 321

Or App 478, 483, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023).

Having reviewed the record, we agree with the state that the evidence was legally sufficient to go to the jury. Defendant had (and presented) a viable jury argument that he did not act recklessly as to the risk of his uncle's death, and that the circumstances did not manifest extreme indifference to human life. However, for an MJOA, the evidence must be viewed in the light most favorable to the state, and, so viewed, there was enough evidence to prove all of the elements of the offense. The trial court did not err in denying defendant's MJOA.

*Jury Instructions on Assault (2019 Case).* Defendant's second and third assignments of error pertain to his two fourth-degree assault convictions in the 2019 case. As relevant here, a person commits fourth-degree assault if he "[i]ntentionally, knowingly or recklessly causes physical injury to another." ORS 163.160(1)(a). Defendant argues that the trial court plainly erred[1] when it failed to instruct the jury in the 2019 case that, to find defendant guilty of fourth-degree assault, it had to find that he had at least a criminally negligent mental state as to the "physical injury" element of the offense.

The state concedes that, in light of *State v. Owen*, 369 Or 288, 321-22, 505 P3d 953 (2022), the failure to give such an instruction constitutes plain error. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (the law in effect at the time of appeal governs, not the law at the time of the trial court's ruling). The state argues the error was harmless, however, and therefore is not a basis for reversal. *See State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) ("We cannot reverse a judgment based on a harmless error, so if the error was truly

---

[1] "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

'harmless,' then we have no discretion and must affirm."). An error is harmless if "there was little likelihood that the error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Defendant barely discusses the facts of the 2019 case and has not developed a meaningful argument as to harmlessness. In any event, we agree with the state that the error was harmless on this record. One assault conviction was for punching another inmate in the face hard enough to break his nose, and the other was for punching a different inmate in the side of the head hard enough to knock him unconscious. In those circumstances, there is little likelihood that the instructional error affected the verdict. *See, e.g.*, *State v. Miles*, 326 Or App 410, 423, 533 P3d 368 (2023) ("[A]lthough the trial court plainly erred by failing to consider whether defendant was at least criminally negligent of the risk of serious physical injury when he tackled C—who was naked and handcuffed—as she attempted to escape, it is not the kind of error that we can correct because the error is harmless."). We reject the second and third assignments of error.

*Jury Instructions on Assault (2018 Case)*. Defendant's fourth assignment of error is similar to his previous two, except that it pertains to his second-degree assault conviction in the 2018 case. As relevant here, a person commits second-degree assault if he "[i]ntentionally or knowingly causes serious physical injury to another." ORS 163.175(1)(a). Defendant argues that the court plainly erred when it failed to instruct the jury in the 2018 case that, to find defendant guilty of assault, it had to find that his mental state was at least criminally negligent as to causing "serious physical injury" to his uncle. The state concedes that the instructional omission qualifies as plain error in light of *Owen* and its progeny but, again, contends that the error was harmless.

We agree with the state for two reasons. First, at trial, defendant understandably focused his defense on the murder charge and, as part of that strategy, effectively conceded the assault charge, telling the jury in closing argument that he had committed assault but not murder. Second, because the jury found defendant guilty of murder and found the other elements of assault to be proved, the

jury necessarily found that defendant beat his uncle with enough intensity to cause severe injuries, including internal decapitation. For both reasons, there is little likelihood that the instructional error affected the verdict on the assault charge. *See State v. Scatamacchia*, 323 Or App 31, 35, 522 P3d 26 (2022), *rev den*, 370 Or 827 (2023) (holding that failure to instruct the jury on the requisite mental state for second-degree assault was harmless, where the jury necessarily found that the defendant had deliberately and unjustifiably punched the complainant in the face multiple times). We reject the fourth assignment of error.

Pro Se *Supplemental Assignments of Error.* Defendant asserts six *pro se* supplemental assignments of error, which we address in turn.

Defendant's first, second, and fourth *pro se* assignments challenge the trial court's refusal to consider certain motions that defendant filed *pro se* while represented by counsel. Criminal defendants do not have a right to hybrid representation, because the right to counsel and the right to self-representation are "distinct, not overlapping, rights[.]" *State v. Stevens*, 311 Or 119, 124, 806 P2d 92 (1991). Because defendant was represented by counsel at the relevant times, the court acted in its authority in declining to consider the *pro se* motions. *State v. McDonnell*, 313 Or 478, 495, 837 P2d 941 (1992) ("[A] trial court has discretion to allow, as well as to deny, hybrid representation.").

Defendant's third *pro se* assignment challenges an evidentiary ruling in the 2018 case. The trial court excluded as hearsay an audio recording of a witness's police interview. As relevant here, defendant had sought to admit that recording to impeach the witness's trial testimony that she could not remember certain details or events. The trial court did not err. Although a witness's prior inconsistent statements may be used for impeachment without violating the hearsay rule, OEC 613, that does not mean that a witness's prior substantive statements may be admitted in lieu of live testimony when the witness's memory has faded by the time of trial. *State v. Staley*, 165 Or App 395, 400, 995 P2d 1217 (2000). Evidence that a witness used to remember more does

not "impeach" her trial testimony that she now remembers less. *Id*.

Defendant's fifth *pro se* assignment challenges the denial of his MJOA on the murder count, specifically asserting that the trial court failed to consider or properly address his affirmative defense under ORS 163.115(3). Defendant does not identify when or how he raised that affirmative defense, stating only that it was "fairly apprised." On appeal, we "may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved." ORAP 5.45(4)(a). In any event, defendant was charged with murder by abuse, as defined in ORS 163.115(1)(c), and the affirmative defense in ORS 163.115(3) does not apply to murder by abuse. It applies only to felony murder as defined in ORS 163.115(1)(b). *See* ORS 163.115(3) (providing for "an affirmative defense to a charge of violating *subsection (1)(b) of this section*" (emphasis added)).  Even if the defense was properly raised, defendant was not entitled to a judgment of acquittal on that basis.

Defendant's sixth *pro se* assignment asserts that he was denied a fair trial because the trial court allowed biased jurors to sit on the jury. It is unclear whether defendant is challenging the *voir dire* in the 2018 case or the 2019 case. More importantly, defendant has not provided any argument on his sixth *pro se* assignment, which is dispositive. *See* ORAP 5.45 (stating briefing requirements); *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

In sum, having considered and rejected each of the arguments raised by defendant, both through counsel and *pro se*, we affirm.

Affirmed.